JIMMY and THEDA SPURGEON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Spurgeon v. Commissioner
Docket No. 9420-74
United States Tax Court
T.C. Memo 1977-326; 1977 Tax Ct. Memo LEXIS 119; 36 T.C.M. (CCH) 1316; T.C.M. (RIA) 770326; September 21, 1977, Filed *119 Petitioners, husband and wife, engaged in a number of stock transactions in 1968. Held, petitioners failed to establish that they had acted as commission agents in these transactions. Accordingly, the proceeds received therefrom were income to petitioners in that year. Held further, petitioners failed to show that they had reasonably relied on bookkeeping services in reporting their income. Thus, failure to report such funds as income was due to negligence or intentional disregard of the rules and regulations. *120 J. Perry Abbott, for the petitioners. Raymond L. Collins, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined deficiencies in, and additions to, petitioners' Federal income taxes as follows: Jimmy Spurgeon
Additions to tax Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654
1964
$22,516.58
$5,629.15
$1,125.83
$623.21
1965
1,427.95
356.99
71.j0
32.73
1966
1,045.16
261.29
52.26
17.90
1967
1,453.74
363.44
72.69
46.53
Theda Spurgeon
Additions to tax Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654
1966
$ 639.26
$ 159.82
$ 31.96
$ 17.90
1967
1,031.34
257.84
51.57
33.00
Jimmy and Theda Spurgeon
Addition to tax Year
Deficiency
Section 6653(a)
1968
$47,626.81
$2,381.34
1969
5,157.01
257.85
1970
7,069.40
353.47 The parties have stipulated that for settlement purposes petitioners' deficiencies and additions to tax, excluding applicable interest, for the years listed are as follows: Jimmy Spurgeon
Additions to tax Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654
1964 *
$2,948.22
$737.05
$147.41
$ 82.55
1965
1,427.95
356.99
71.40
32.73
1966
1,045.16
261.29
52.26
17.90
1967
1,453.74
363.44
72.69
46.53
*121 Theda Spurgeon
Additions to tax Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654
1966
$ 639.26
$159.82
$31.96
$17.90
1967
1,031.34
257.84
51.57
33.00
Jimmy and Theda Spurgeon
Addition to tax Year
Deficiency
Section 6653(a)
1969 *
$4,000.00
$200.00
1970 *
5,200.00
260.00
Moreover, the parties agree that the issues relating to the tax year 1968 that remain for our decision [1] are whether the full amounts received by petitioners from sales of United Australian Oil Company (hereinafter UAO) stock in 1968 were income to them and, if so, whether petitioners' failure to report such funds as income was due to negligence or intentional disregard of rules and regulations pursuant to section 6653(a), I.R.C. 1954. *122 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. As the controversy has been narrowed to the UAO stock sales, only facts pertinent to such transactions will be presented. Petitioners Jimmy and Theda Spurgeon, husband and wife, resided in Fort Worth, Texas, at the time the petition herein was filed. Their joint Federal income tax return for the calendar year 1968 was filed with the southwest internal revenue service center, Austin, Texas. In 1968 petitioners, in several transactions, obtained and sold 285,000 shares of UAO stock receiving a total of $68,100.91. In addition, petitioners sold 30,000 shares of stock that for some unstated reason was not transferred on UAO's books. Petitioners repurchased that stock for $8,300. On schedule D of their 1968 return petitioners reported a short-term capital gain from the sale of the UAO stock, reporting $68,120.51 [2] as the gross sales price, a cost basis of $61,320.51 and a gain of $6,800. This was the only income reported for that year. *123 During 1968 petitioners maintained two checking accounts at Gateway National Bank, Fort Worth, Texas, one under the name Theda Spurgeon and the other under the name Mine Motors, depositing therein $22,341.29 and $838, respectively. Petitioners admit that amounts deposited in the two checking accounts in 1968 in excess of the aforenoted reported $6,800, or $16,379.29 ($22,341.29 plus $838 less $6,800), were additional income that should have been reported in 1968. Respondent in his notice of deficiency, dated September 6, 1974, determined that petitioners "realized a gain of $68,120.51 [3] from the sale of United Australian Oil Company stock, instead of $6,800 as reported * * * because the basis of such stock has not been established." Jimmy Spurgeon was interviewed by special agents Charles Rahren and Gene Boren on two occasions. [4] He told them that part of the UAO stock was purchased with funds he had borrowed. He was also interviewed by special agent Ron Bergmann in June of 1971 and on July 8, 1971. Again Spurgeon stated that the stock was obtained, in part, with borrowed funds. *124 Petitioners were in the automobile business in 1969. OPINION The primary issue for consideration is whether the total proceeds received from the sales of the UAO stock constituted short-term capital gain to petitioners under sections 61(a)(3) [5] and 1222(1). [6]
Petitioners allege that Spurgeon acted as a commission agent for Herb Fortson in the UAO stock transactions. On each occasion he received the stock from Fortson, delivered it for sale to one of two brokerage houses [7] and, when the sale was consummated by the brokers, remitted the sales proceeds to Fortson less a 10 percent commission. Such purported remittances to Fortson were in the form of a *125 1968 Oldsmobile, [8] one year's insurance coverage and cash. Respondent contends that petitioners retained the UAO stock sales proceeds, depositing part thereof in the two Gateway National Bank checking accounts. He argues that the remaining proceeds were retained by petitioners because as the record indicates they were needed to repurchase the UAO stock that was not transferred and to aid in the establishment in 1969 of their used car business, each requiring the use of funds over and above amounts reflected in the foregoing checking accounts. After considering all relevant facts and the entire record we find that petitioners have failed to present sufficient evidence to establish that Spurgeon acted as a commission agent for Herb Fortson in the sale of the UAO stock. Though Spurgeon testified that the stock was sold by him as a commission agent for Fortson his testimony conflicts with statements he made at various times to three internal revenue *126 special agents. Petitioner's testimony is uncorroborated; yet from the record it appears that not only the unavailable Fortson, but at least one of the stockbrokers involved in the transactions was cognizant of the details of these transactions. The testimony of the one nonparty witness (Spurgeon's brother) and the documents received in evidence on petitioners' behalf are subject to such diverse interpretations that we cannot find that they are of any meaningful help to petitioners in carrying their burden. It is, of course, well settled that the burden of proof is upon petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners have not made a concerted effort to meet this burden. Thus, we have no choice but to find that the sales proceeds were retained by petitioners. Additionally, petitioners have presented no evidence with respect to the cost of the stock. Under the general rule of section 1012 the basis of property shall be its cost. This element has not been established, therefore, the entire amount of the proceeds is income to petitioners. Finally, petitioners assert that their failure *127 to declare the full amount of income in 1968 was inadvertent as they reasonably relied on a bookkeeping service to prepare their return. However, petitioners fail to show that their reasonable reliance on such services was based on the fact that all available records of their transactions for the year in question were supplied to the bookkeeper and that the bookkeeper was properly instructed. Leroy Jewelry Co., Inc. v. Commissioner,36 T.C. 443 (1961). Once again, petitioners have failed to satisfy their burden. Decision will be entered under Rule 155. Footnotes
*. For these years the parties have settled on deficiencies and additions different from those initially determined.↩
*. For these years the parties have settled on deficiencies and additions different from those initially determined.↩
1. Respondent on brief concedes that the determination increasing petitioners' 1968 schedule C income by $35,789.42 should be a $16,000 increase. Petitioners at trial and on brief have not commented on the foregoing and we, therefore, adopt respondent's concession.↩
2. This conflicts with the stipulated gross sales price of $68,100.91.↩
3. See footnote 2, supra↩.
4. Rahren testified that the dates of the interviews were 12/22/69 and 1/19/70; Boren testified that they were 12/1/69 and 12/22/69.↩
5. SEC. 61. GROSS INCOME DEFINED. (a) General Definition.--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: * * *
(3) Gains derived from dealings in property * * *. ↩
6. Short-term capital gain.--The term "short-term capital gain" means gain from the sale or exchange of a capital asset held for not more than 6 months, if and to the extent such gain is taken into account in computing gross income.↩
7. David H. Rankin & Co. and Abbett, Sommer & Co. ↩
8. We note that respondent claims that the evidence presented by petitioners reflected not one but three automobiles, all with identical identification numbers and license tags.↩